# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMIE TREES, ) | |
| ) | |
| Petitioner, ) | Case No. CV 05-116-S-EJL |
| ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Currently pending before the Court is Jamie Trees' Petition for Review (Docket No. 1) seeking review of the final decision of Respondent denying her claim for Supplemental Social Security Income benefits under Title XVI of the Social Security Act. The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## I.

## ADMINISTRATIVE PROCEEDINGS

Jamie Trees ("Petitioner" or "Claimant") applied for supplemental security income benefits under Title XVI of the Social Security Act alleging disability beginning January 29, 2003, due to lymphoma with residual symptoms and a panic disorder. (AR 14, 15). Petitioner's application was denied initially on May 9, 2003 (AR 43), and again after reconsideration on August 13, 2003 (AR 36). Petitioner filed a timely request for a hearing before an Administrative Law Judge. (AR 35). ALJ Gilbert Alejandro Martinez held a hearing on

**REPORT AND RECOMMENDATION -1-**

February 4, 2004, at which time Petitioner, represented by counsel, appeared and testified. (AR 293). Clark Newhall, M.D., J.D., a medical expert, and Anne F. Aastum, M.Ed., C.R.C., a vocational expert, also appeared, and Dr. Newhall testified. (AR 293–94). On June 28, 2004, the ALJ issued a decision denying Petitioner's claim because he found Petitioner is capable of making a successful adjustment to work that exists in significant numbers in the national economy and she is therefore not disabled. (AR 14–22).

Petitioner requested the Appeals Council review the ALJ's decision. (AR 10). The Appeals Council denied Petitioner's request on January 25, 2005, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 4).

Having exhausted her administrative remedies, Petitioner timely filed this instant action. *See Petition for Review* (Docket No. 1). Petitioner argues (1) that the ALJ violated Petitioner's due process rights by indicating during the hearing that he would grant a closed period of disability but then denying Petitioner's claim altogether and (2) that the ALJ erred by failing to properly assess Petitioner's residual functional capacity. *Petitioner's Brief in Support of Petition for Review*, p. 2 (Docket No. 11).

Petitioner requests that the ALJ's decision be remanded for further consideration. *Id*. at p. 11.

## II.

## BACKGROUND

At the time of the hearing before the ALJ, Petitioner was thirty-seven years of age with the equivalent of a general education. (AR 15). She has past work experience as a waitress, a food and beverage clerk, a cashier, a telemarketer, and as a mortgage salesperson. (AR 15).

## III.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process. 20 C.F.R. §§ 401.1520, 416.920 (2005). The second part of that process involves a determination regarding whether the claimant has a "severe impairment." 20 C.F.R. § 416.905(a). If no "severe" impairment is found, the claimant will be found not to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence . . . ." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

The issues presented in the instant appeal are whether the following are based on application of proper legal standards: (1) the ALJ's denial of Petitioner's claim after allegedly indicating during the hearing that he would grant a closed period of disability; and (2) the ALJ's

**REPORT AND RECOMMENDATION -4-**

assessment of Petitioner's residual functional capacity.[1]  *Petitioner's Brief in Support of Petition for Review*, p. 2 (Docket No. 11).

## IV.

## DISCUSSION

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (2005).

**A.**     **Sequential Process**

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  If the answer is in the affirmative, disability benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity since the alleged onset of disability.  (AR 16).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If the answer is in the negative, disability benefits are denied.  20 C.F.R. § 404.1520(c).  In the instant action, the ALJ found that Petitioner has the following medically-determinable, severe impairments: non-hodgkin's lymphoma and an anxiety-related disorder.  (AR 16).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is

---

[1] The only standard to be applied in the instant appeal is a determination of whether the ALJ's decisions are based on application of proper legal standards.  Petitioner has not challenged any of the ALJ's factual determinations.  *Petitioner's Brief in Support of Petition for Review*, p. 2 (Docket No. 11).

**REPORT AND RECOMMENDATION -5-**

disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).  In the instant action, the ALJ concluded that Petitioner's severe impairments do not meet or equal any listing of impairments under Appendix 1, Regulations No. 16. (AR 17).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  In this respect, the ALJ concluded that Petitioner retains the residual functional capacity to perform the exertional demands of sedentary work.  (AR 19).  The ALJ also concluded that Petitioner cannot perform any of her past relevant work because it was too exertional for her when considering her present residual functional capacity.  (AR 20).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  In this respect, the ALJ found that, considering Petitioner's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy and she is therefore not under a disability as defined in the Social Security Act.  (AR 21).

**B.**     **Analysis**

Petitioner challenges the ALJ's (1) denial of Petitioner's claim after he allegedly indicated during the hearing that he would grant a closed period of disability and (2) assessment of Petitioner's residual functional capacity, claiming these decisions were not based on the

correct legal standards.  *Petitioner's Brief in Support of Petition for Review*, p. 2 (Docket No. 11).

      1.      **Petitioner's Due Process Rights**

Petitioner challenges the ALJ's denial of Petitioner's claim after he allegedly indicated, during the hearing, that he would grant a closed period of disability, claiming the ALJ violated Petitioner's "rights to due process by failing to afford her an opportunity to specifically address her disability during the time of the closed period."  *Id*. at p. 7.  Petitioner asserts that because of the ALJ's supposed indication during the hearing, the remainder of the hearing discussion turned to specific testing that may be helpful to determine whether Petitioner continued to have lymphomas after her treatment.  *Id*. at p. 6.  Apparently, Petitioner believed the ALJ had already decided to award benefits for at least a closed period of disability, thus making further evidence of her disability during that closed period superfluous.  *See id*. at pp. 6–7.

Petitioner quotes the following portion of the hearing transcript, claiming the "ALJ clearly indicated that [Petitioner] was entitled to at least a closed period of disability":

> ALJ:    Well, I have two options here, all right?  One is to give her a closed period for one year, January '03 to February '04.  The bad side of that is, it doesn't give her any Medicaid card.
> ATTY:  Right.
> ALJ:    But the good side is, it gives her a year benefits that could help her at least get her financial situation at least under a little order and go get that test done.  If appears that the lymphoma needs further evaluation from Social Security, then a new claim could always be filed after that test is done.  That's one approach, I guess.  The other approach is to just submit it as — well, we got on the records — I haven't looked at all these records, so I don't know —
> ATTY:  Yeah.  And I don't think those answered the question that you're getting at, which is whether her lymphoma's controlled with the prescribed treatment thus far.
> ALJ:    Well —
> ATTY:  The CT scan that was done —
> ALJ:    — let me just give you this, okay?

**REPORT AND RECOMMENDATION -7-**

> ATTY:   Okay.
> ALJ:   If she's going to win the case, it's not going to be on anxiety because that's complicated too much with the past history with drugs.
> ATTY:   Okay.
> ALJ:   So it's really going to be based on the lymphoma.
> ATTY:   All right.
> ALJ:   And what you're saying is that we haven't got all the right tests done to tell us exactly where that's at today, what's the status.
> ATTY:   I think that's true.  I think the CT she had yesterday may answer the question if it does show that there's some growth of the lymphomas.
> ALJ:   So as the record stands, that's still kind of an unanswered chapter.
> ATTY:   Uh-huh.
> ALJ:   That chapter of the book that hasn't been written yet.  So my options are basically two.  One is we could give her a closed period.  The door's always open to file a new claim after she's gotten the check and been able to go get the test.  Or the second option is, we can keep the record open and she can go get some records from some doctors that may help answer the question.  I don't know.
> ATTY:   Could we do this, Judge?  Could we get 20 days to get the results of the CT scan in to see if that answers the question, and at that point submit a letter?
> ALJ:   I can give more than 20 days.  I can give you 40 days.
> ATTY:   Okay.  And then at that point, it may be possible to do a biopsy during that time anyway so —
> ALJ:   Uh-huh.
> ATTY:   And —
> ALJ:   And she can check to find out what the costs —
> ATTY:   Right.
> ALJ:   — are and you guys can consider the closed period —
> ATTY:   Right.
> ALJ:   — verses the open end claim —
> ATTY:   Okay.  And then —
> ALJ:   — and how you want to proceed.  I don't know what the CT scan says until we get report in.

(AR 324–26); *Petitioner's Brief in Support of Petition for Review*, pp. 5–6 (Docket No. 11).

With regard to Petitioner's assertion that the above transcript excerpt shows that "[t]he ALJ clearly indicated that [Petitioner] was entitled to at least a closed period of disability," the Court finds otherwise.  *See Petitioner's Brief in Support of Petition for Review*, p. 6 (Docket No.

**REPORT AND RECOMMENDATION -8-**

11).  The above transcript excerpt demonstrates that the ALJ considered granting a closed period of disability.  *See id*.  The ALJ specifically used the phrase, "*If* she's going to win the case . . . ." (AR 324).  Use of the term "if" does not comport with Petitioner's contention that the ALJ had clearly indicated that Petitioner had already won at least a closed period of disability.

As to Petitioner's due process argument, the Court finds, and thus concludes, that Petitioner was afforded an opportunity to fully address her disability, including during the time of the closed period, i.e., between January 2003 and February 2004.  For example, at the hearing, Petitioner testified regarding her disabling symptoms.  (*See* AR 314–23).  Further, the record contains a significant amount of medical evidence regarding her disability during the relevant time period.  (*See* AR 120–290).

Accordingly, after carefully reviewing the record, the Court finds, and thus concludes, that the ALJ did not clearly indicate at the hearing that Petitioner was entitled to at least a closed period of disability.  In addition, the Court finds that Petitioner was not deprived of her due process rights because she was afforded an opportunity to address her disability during the would-be closed period.

      2.      **Assessment of Petitioner's Residual Functional Capacity**

Petitioner also challenges the ALJ's assessment of her residual functional capacity, claiming the residual-functional capacity finding was not based on correct legal standards because the ALJ failed (1) "to make a specific assessment of [Petitioner's] functional capacity on a function by function basis"; (2) "to include any mental limitations in his assessment despite finding that [Petitioner] has a severe anxiety disorder"; and (3) "to gather vocational expert testimony regarding [Petitioner's] ability to work in jobs available in the national economy."

*Petitioner's Brief in Support of Petition for Review*, p. 7 (Docket No. 11).  The Court will address each of these alleged failures individually.

        **a.**        **Assessing Functional Capacity on Function-by-Function Basis**

At step four of the sequential evaluation process, the ALJ must determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  In this case, the ALJ determined that Petitioner retains the residual functional capacity to perform the exertional demands of sedentary work.  (AR 19).

The residual functional capacity assessment "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p, *Exhibit A to Petitioner's Brief in Support of Petition for Review*, p. 15 (Docket No. 11).  Social Security Regulation 96-8p specifically states that the residual functional capacity "must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it."  *Id*.  Further, it notes that

> in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level.  Therefore, it is necessary to assess the individual[']s capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.

*Id*.

In addressing step four in his decision, the ALJ first laid out the standard for determining a claimaint's residual functional capacity.  (AR 17–18).  The paragraphs following the standard appear to lay out Petitioner's medical evidence with regard to her condition.  (*See* AR 18).  Next,

**REPORT AND RECOMMENDATION -10-**

the ALJ describes Petitioner's testimony regarding her daily activities, her background, her testimony at the hearing, and her current medications.  (*See* AR 18–19).  Then, Petitioner's limitations due to her mental impairment are analyzed.  (*See* AR 19).  Immediately thereafter, the ALJ concludes that "the claimant retains the residual functional capacity to perform the exertional demands of sedentary work."  (AR 19).

The ALJ's decision does not comport with the requirements of Social Security Regulation 96-8p because the ALJ expressed Petitioner's residual functional capacity "initially in terms of the exertional categor[y] of 'sedentary.'"  *See* 96-8p, *Exhibit A to Petitioner's Brief in Support of Petition for Review*, p. 15 (Docket No. 11).  Further, the required function-by-function assessment is missing as to Petitioner's physical limitations.

Notably, Respondent has not contended that the ALJ engaged in a function-by-function analysis.  *See Respondent's Brief*, p. 6 (Docket No. 12).  Rather, Respondent argues that, under SSR 96-8p, the ALJ need only *consider* a claimant's condition on a function-by-function basis, but need not *articulate* his thoughts, particularly because there are no fewer than fifty-four work functions in the regulations.  *See id*. at pp. 5–6.  It is true that an ALJ need not express his analysis of each of the fifty-four work functions in his decision.  However, at least some discussion of a function-by-function analysis must be included before determining the appropriate exertional category of a claimant's residual functional capacity.  Without some discussion of the function-by-function analysis, the reviewing court would have no way of determining whether an ALJ applied the correct legal standards set forth in SSR 96-8p.

In summary, though the ALJ obviously considered Petitioner's medical evidence, the ALJ failed to engage in a function-by-function analysis before determining her residual functional capacity to perform the exertional demands of sedentary work.  Thus, the residual

**REPORT AND RECOMMENDATION -11-**

functional capacity assessment was not based on correct legal standards.  The district court should remand this action for further proceedings.

Though the Court has already recommended that this action be remanded, to address all issues presented the Court will address Petitioner's other complaints.

### b. Mental Limitations in Residual Functional Capacity Assessment

Petitioner challenges the ALJ's determination of Petitioner's residual functional capacity assessment because the ALJ failed "to include any mental limitations in his assessment despite finding that [Petitioner] has a severe anxiety disorder." *Petitioner's Brief in Support of Petition for Review*, p. 7 (Docket No. 11).

The ALJ notes in his decision that "[t]he term 'residual functional capacity' is defined in the Regulations as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks (20 CFR § 416.945 and Social Security Ruling 96-8p)." (AR 17).  Nonetheless, in assessing Petitioner's residual functional capacity, the ALJ made no reference as to whether Petitioner's mental limitations affect her ability to perform work-related tasks.  After finding that Petitioner has the medically-determinable, severe impairment of an anxiety-related disorder, (AR 16, 19), he concluded that Petitioner "is mildly limited in the area of activities of daily living [and] mildly limited in the area of maintaining social functioning." (AR 19).  Immediately thereafter, the ALJ found Petitioner retains the residual functional capacity to perform the exertional demands of sedentary work.  *Id*.

From the ALJ's decision as written, the Court cannot conclude that the ALJ considered the effects of Plaintiff's mental limitations on her ability to perform work-related tasks. Therefore, the decision was not based on correct legal standards.  If the district court remands

**REPORT AND RECOMMENDATION -12-**

this matter as recommended, the ALJ should also consider any mental limitations on Petitioner's ability to perform work-related tasks.

### c. Necessity of a Vocational Expert's Testimony

An ALJ need not obtain the testimony of a vocational expert, and he may rely solely on the Medical-Vocational Guidelines, but only when a claimant can perform the full range of applicable work. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). Conversely, where the claimant has a significant non-exertional limitation, the testimony of a vocational expert must be taken. *Id*. at 1036. A "non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577–78 (9th Cir. 1988)). If a claimant has a non-exertional limitation that significantly affects the claimant's residual functional capacity such that the claimant does not meet the full range of applicable work, the ALJ must use the testimony of a vocational expert. *See Desrosiers*, 846 F.2d at 577 (citing *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (noting an ALJ may rely exclusively on the Guidelines if the non-exertional impairments do not significantly affect claimant's residual functional capacity); *Bapp v. Bowen*, 802 F.2d 601, 605–06 (2d Cir. 1986) (holding an ALJ must consider whether the range of work claimant could perform was so significantly diminished as to require the testimony of a vocational expert); *Tucker v. Heckler*, 776 F.2d 793, 795–96 (8th Cir. 1985) (finding it unnecessary to call vocational expert where the ALJ thoroughly considered claimant's non-exertional impairments and explicitly determined that they did not diminish claimant's exertional capacities); *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984) (noting a proper inquiry is whether a given non-exertional condition affects an individual's functional capacity to perform

**REPORT AND RECOMMENDATION -13-**

work of which he is exertionally capable); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 537 (6th Cir. 1981) (holding the Guidelines must be applied unless the alleged non-exertional limitations are severe enough to restrict a full range of gainful employment at the designated level)).

In this case, the ALJ found, first, that Petitioner retains the residual functional capacity to perform the exertional demands of sedentary work, (AR 19); second, that she is "capable of performing a *significant* range of sedentary work," (AR 20) (emphasis added); and third, that she "has the residual functional capacity to perform the *full* range of sedentary work." (AR 21) (emphasis added).

In light of the inconsistent findings, it is unclear whether the ALJ found Petitioner could perform just a significant range of sedentary work or, rather, the full range. If the district court remands this matter as recommended and if, on remand, the ALJ determines Petitioner still retains the residual functional capacity to perform work in the sedentary range and that she can perform the *full* range of sedentary work, the testimony of a vocational expert will not be required, though it may be helpful. However, if the ALJ concludes that Petitioner cannot perform the full range of work due to any significant non-exertional limitation, the ALJ must use the testimony of a vocational expert.

V.

**CONCLUSION**

In bringing her Petition for Review, Petitioner challenged several of the ALJ's findings, claiming they are not based on correct legal standards. *See Petitioner's Brief in Support of Petition for Review*, p. 2 (Docket No. 11). As to these challenges, the Court concludes that the ALJ did not indicate at the hearing that Petitioner was entitled to at least a closed period of

**REPORT AND RECOMMENDATION -14-**

disability, and that Petitioner's due process rights were not violated because she was afforded the opportunity to present evidence of her disability during the would-be closed period. The Court concludes that the ALJ's assessment of Petitioner's residual functional capacity was, at least partially, not based on correct legal standards in that the ALJ did not engage in a function-by-function analysis, did not consider the effects, if any, of Petitioner's mental limitations on her ability to perform work-related tasks, and was not clear as to whether Petitioner can perform the full range of sedentary work, making it unclear as to whether the testimony of a vocational expert was required.

## VI.

## RECOMMENDATION

In accordance with the foregoing, this Court recommends that the District Court enter an order granting the Petition for Review, reversing the Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act, and remanding this matter for further proceedings.

Written objections to this Report and Recommendation must be filed within ten (10) days pursuant to 28 U.S.C. § 636(b)(1) and District of Idaho Local Civil Rule 72.1(b)(1) or, as a result, a party may waive the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals.

DATED: **May 2, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge